WALTER H. BURKHARDT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burkhardt v. Commissioner
Docket No. 2950-75.
United States Tax Court
T.C. Memo 1977-167; 1977 Tax Ct. Memo LEXIS 274; 36 T.C.M. (CCH) 697; T.C.M. (RIA) 770167; 57 Oil & Gas Rep. 433; June 1, 1977, Filed Walter H. Burkhardt, pro se. John B. Pohl, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: This case was assigned to and heard by Special Trial Judge James M. Gussis, pursuant to Rules 180 and 182, Tax Court Rules of Practice and Procedure. His report was filed on March 3, 1977, and subsequently the petitioner filed exceptions to his report. The exceptions have been considered and are rejected. Accordingly, the Court agrees with and adopts the report which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE
*275 GUSSIS, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income tax for the years 1971 and 1972 in the respective amounts of $1,732.05 and $1,240.66. Petitioner has conceded one of the issues involving the taxable year 1971 and respondent has conceded an issue with respect to the taxable year 1972. The remaining issues before the Court are (1) whether petitioner is entitled to a deduction for intangible development costs in excess of the amount allowed in 1971 with respect to his McAlpine Oil Company investment; and (2) whether petitioner is entitled to a depreciation deduction in excess of the amount allowed in 1971 and 1972 with respect to his investments in Grace Development Company. FINDINGS OF FACT Some of the facts were stipulated and they are so found. Petitioner was a resident of West Germany at the time he filed his petition. During the year 1971, petitioner made nine payments to McAlpine Oil Company in Tulsa, Oklahoma in the total amount of $3,800. Petitioner claimed a deduction in 1971 for this entire amount which he designated on his income tax return as a drilling expense. Respondent has allowed a deduction in the amount *276 of $1,586.76 as intangible drilling costs for the oil wells involved and has disallowed the balance of the amount claimed by petitioner. Under an agreement dated October 20, 1970, Grace Development Company purchased from Professional Petroleum Exploration, Inc. certain interests in producing oil and gas wells and other described properties and interests. On November 30, 1970 petitioner executed an agreement with Grace Development Company that provided in part as follows: THIS AGREEMENT ENTERED INTO this 30th day of November, 1970 by and between Nicholas J. Pustay dba Grace Development Company, P.O. Box 1564 East Canton, Ohio hereinafter called party of the first part and W. H. Burkhardt, 800 Cathedral of Learning, Pittsburgh, Pennsylvania 15213 hereinafter called party of the second part. WHEREAS party of the first part has entered into a purchase agreement for certain producing oil and gas wells in the State of Ohio, with Professional Petroleum Exploration of Denver, Colorado dated October 20, 1970, a copy of which is attached hereto and made a part hereof for all purposes and WHEREAS it is the desire of the party of the first part to make party of the second part a *277 party in interest to said purchase agreement to the extent of 10% and subject to all its conditions and terms except for paragraph (c) and each instance where the date October 31, 1970 occurs which is changed to read November 30, 1970. NOW THEREFORE for the consideration of Ten Thousand and no/100 dollars ($10,000.00) the receipt of which is hereby acknowledged, party of the first does make party of the second part a party in interest to the extent and under the conditions stated above. Party of the second part does hereby specifically authorize party of the first part to operate and control the wells on his behalf and to market oil and gas produced and saved at the most favorable field price obtainable by him. Party of the second part will therefore be entitled to his proportionate share of both production and the net proceeds from operating fees. On February 8, 1971 petitioner and Grace Development Company executed a similar agreement under which petitioner, upon payment of $10,000, acquired an additional 10 percent interest.
Petitioner claimed a depreciation deduction with respect to his investment with Grace Development Company in the amount of $4,000 for each of the *278 years 1971 and 1972. Respondent allowed a deduction for depreciation in the amount of $400 for each of the years 1971 and 1972 and disallowed the balance of the amount claimed by petitioner in each of those years. OPINION Petitioner made payments in the total amount of $3,800 to the McAlpine Oil Company in 1971 and deducted the entire amount as a drilling expense in that year. Respondent allowed a deduction of $1,586.76 as intangible drilling and development costs incurred with respect to certain designated oil wells. The statutory authority for allowing a taxpayer to elect to claim deductions for intangible drilling and development costs is contained in section 263(c), Internal Revenue Code of 1954. [1] The relevant regulations promulgated pursuant to this statutory authority appear in section 1.612-4, Income Tax Regs.[2]
*279 Petitioner has the burden of proof on this issue. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure. In a statement prepared by McAlpine Oil Company petitioner was notified of the allocation of expenses incurred with respect to designated wells in 1971 among the categories "Intangible Development," "Intangible Operating" and "Tangible Equipment." The total amount of intangible development and intangible operating costs attributable to petitioner in the statement represents the amount allowed by respondent as a deduction. Petitioner conceded at the trial that he was not entitled to deduct in 1971 the full amount of $3,800 originally claimed by him. However, he believes he is entitled to a deduction somewhat greater than the amount allowed. But he has offered no persuasive evidence to support such a belief. He merely questioned the accuracy of the figures prepared in the McAlpine Oil Company statements. We do not believe that petitioner's unsupported contentions, which remain essentially conjectural, are sufficient to show that he is entitled to a deduction in 1971 in excess of the amount allowed. We must on *280 the basis of this record sustain the respondent. Upon payment of $20,000 in 1970 and 1971, petitioner acquired from Grace Development Company a 20 percent interest in certain producing oil and gas wells which Grace Development Company had previously acquired from Professional Petroleum Exploration, Inc.[3] Petitioner claimed a deduction for depreciation in the amount of $4,000 in both 1971 and 1972 with respect to this investment. Respondent allowed a depreciation deduction of $400 for each of the years 1971 and 1972. Respondent determined that only 20 percent of petitioner's $20,000 investment (or $4,000) represents an interest in physical equipment and that based upon a 10-year life the annual allowable depreciation in 1971 and 1972 was $400. *281 As indicated above, section 1.612-4(a), Income Tax Regs., provides an option with respect to intangible drilling and development costs, i.e., such costs may be chargeable to capital or to expense. Section 1.612-4(b)(2) of the regulations provides that "[if] the taxpayer charges such expenditures as fall within the option to capital account, the amounts so capitalized and not deducted as a loss are returnable through depreciation insofar as they are represented by physical property." Moreover, expenditures for tangible property having a salvage value (which must be capitalized under the regulations) are also recovered through depreciation. Grace Development Company, in a letter to petitioner dated November 29, 1972, indicated that their acquisition from Professional Petroleum Exploration, Inc. "included physical equipment, which we estimate at 20% of the acquisition." [4] Consequently, under the unambiguous provisions of the regulations, only 20 percent of the acquisition price (which represents physical property) is returnable through depreciation. See United States v. Dakota-Montana Oil Co.,288 U.S. 459 (1933). [5] On the basis of this record, petitioner's *282 contention that the remaining 80 percent of his investment represents an investment in intangible leases and hence is also returnable through depreciation simply ignores the applicable statutory scheme of long standing and is completely without merit. [6]
Petitioner also contends that the useful life of the physical equipment is five years rather than ten years as determined by the respondent. The determination of the *283 respondent is presumptively correct. Welch v. Helvering, supra.The determination of the useful life of an asset is a question of fact taking into consideration many factors. Casey v. Commissioner,38 T.C. 357 (1962); section 1.167(b), Income Tax Regs. Proof of such facts should consist of facts known or reasonably anticipated at the end of the year for which depreciation is taken. Casey v. Commissioner,supra.Here, petitioner's estimate of a five-year life for the equipment appears to be nothing more than a guess. Apart from some vague and unsupported testimony by petitioner concerning the operations of the various leases here involved there is nothing in this record to support a finding that the useful life for the physical equipment here involved was less than ten years. We must on the basis of this record sustain the respondent. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references will be to the Internal Revenue Code of 1954, as amended. ↩
2. Section 1.612-4(a), Income Tax Regs., provides in relevant part as follows: § 1.612-4. Charges to capital and to expense in case of oil and gas wells.--(a) Option with respect to intangible drilling and development costs. In accordance with the provisions of section 263(c)↩, intangible drilling and development costs incurred by an operator (one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights) in the development of oil and gas properties may at his option be chargeable to capital or to expense. This option applies to all expenditures made by an operator for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas. Such expenditures have for convenience been termed intangible drilling and development costs. They include the cost to operators of any drilling or development work (excluding amounts payable only out of production or gross or net proceeds from production, if such amounts are depletable income to the recipient, and amounts properly allocable to cost of depreciable property) done for them by contractors under any form of contract, including turnkey contracts. * * * In general, this option applies only to expenditures for those drilling and developing items which in themselves do not have a salvage value. * * *
3. The agreement (dated October 20, 1970) under which Grace Development Company purchased the interests here involved from Professional Petroleum Exploration, Inc. described said interests as follows: (1) all the right, title and interest (both overriding royalty interests and working interests) of Professional Petroleum Exploration, Inc. in certain designated oil and gas wells and the oil and gas leases relating thereto; (2) the rights and interests of Professional Petroleum Exploration, Inc. as operator under the operating agreements with other interest owners on all of the designated wells (with one exception); and (3) the interest of Professional Petroleum Exploration, Inc., including salvage rights, in all equipment in place on the well sites whether above or below the surface.↩
4. Petitioner does not dispute the 20 percent allocation of the acquisition price to physical equipment. ↩
5. We note that prior to the Internal Revenue Code of 1954, although there was no specific provision in the Internal Revenue Code for the expensing of intangible drilling costs, the regulations since 1917 have granted taxpayers the option to expense or capitalize intangible drilling expenses (Art. 170, Regs. 33), and these regulations were held valid by the courts. United States v. Dakota-Montana Oil Co., supra↩.
6. We note that petitioner, in accordance with the statute, obtained a deduction for the percentage depletion allowance during the period here involved with respect to his income from the Grace Development oil and gas wells.↩